**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

NORFOLK COATING SERVICES, LLC,

      Plaintiff,

v.                                               Civil Case No. 2:14cv188

THE SHERWIN-WILLIAMS COMPANY,

      Defendant.

**OPINION AND ORDER**

This matter is before the Court on The Sherwin Williams Company's ("Defendant's") Motion to Dismiss Count Four of the Amended Complaint ("Motion") filed on July 15, 2014. ECF No. 26. Defendant argues in its Motion that Count Four should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Additionally, the Court will briefly address Defendant's original Motion to Dismiss (ECF No. 3) filed on May 8, 2014, which was rendered moot by the filing of the Amended Complaint.

## I.   BACKGROUND

**A. Factual Background[1]**

Plaintiff, Norfolk Coating Services ("Plaintiff" or "NCS"), is a construction company owned by Michael Winterling that primarily performs its work at Colonna's Shipyard in Norfolk, Virginia. Am. Compl. ¶¶ 3, 9. NCS was founded by Mr. Winterling in December 2011 upon his

---

[1] "In considering a motion to dismiss, [the Court] accept[s] as true all well-pleaded allegations and view[s] the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The Court cautions, however, that the facts alleged by Plaintiff are recited here for the limited purpose of deciding the instant Motion. The recited facts are not factual findings upon which the parties may rely for any other issue in this proceeding.

separation from a business partner at Surface Preparation and Coatings, Inc. ("Surface"). *Id.* at ¶ 9.

Defendant is in the business, among other things, of selling paint equipment and performing maintenance and repair work on commercial paint equipment. *Id.* at ¶¶ 11–12. As a part of that business, Defendant sold Surface a Graco XP70 Plural-Component Sprayer (the "Sprayer"). *Id.* at ¶ 15. When Mr. Winterling subsequently left Surface to start NCS, he took the Sprayer with him to use with his new business venture. *Id.* at ¶ 16. Subsequently, Defendant arranged with NCS for the necessary training and certification of NCS employees on the use of the Sprayer. *Id.* at ¶¶ 21–22. In February 2013, Plaintiff and Defendant contracted for Defendant to perform whatever repair or maintenance work was necessary to refurbish the Sprayer. *Id.* at ¶ 23.

Around that same time, Plaintiff contracted with Colonna's Shipyard to perform painting work on the USS DYNAMIC. *Id.* at ¶¶ 24–25. Plaintiff relied upon Defendant for all of its equipment and paint needs for the USS DYNAMIC job due to the relationship between Defendant and Mr. Winterling. *Id.* at ¶ 27. Additionally, the recently refurbished Sprayer was used for the first time on this job. *Id.* at ¶ 30.

The Sprayer, when functioning properly, precisely mixes various paint components to match the exact specifications of each job. *Id.* at ¶ 17. The metering valve, one essential part of the Sprayer, is intended to "regulate the flow of the various paint components being mixed to ensure that the final product meets the exact parameters specific to each job." *Id.* at ¶ 18.

Nearly immediately upon its initial use for the USS DYNAMIC job, the Sprayer began displaying an error code. *Id.* at ¶ 34. Plaintiff informed Defendant about the error code and Defendant sent over a technician who determined that the metering valve was bad, and replaced

it with a new one. *Id.* at ¶¶ 35–39. When turned on, however, the Sprayer displayed the same error code as before. Id. at ¶ 40.

Defendant's technician advised Plaintiff that the error code was no longer valid and that he should proceed with the USS DYNAMIC job. *Id.* at ¶ 41. Relying on this assurance, Plaintiff's employee attempted to complete the job, discovering later that the Sprayer was not mixing paint appropriately. *Id.* at ¶¶ 42–46. This improper mixture caused the paint to peel off of the USS DYNAMIC's ballast tanks. *Id.* at ¶¶ 47–48. Due to this issue, Colonna's Shipyard replaced Plaintiff with a different sub-contractor and charged Plaintiff the cost of this replacement. *Id.* at ¶¶ 49–52. Furthermore, as a result of this issue, Colonna's Shipyard prohibited Plaintiff from performing any other work at the shipyard "for a period of time" until "recently." *Id.* at ¶¶ 53–54.

## B. Procedural History

Originally filed in Chesapeake Circuit Court, the instant case was removed to this Court on May 2, 2014. ECF No. 1. Defendant filed its original Motion to Dismiss, its Answer, and a Counterclaim on May 8, 2014. ECF Nos. 3, 5. On June 18, 2014, Plaintiff filed its Answer to Counterclaim. ECF No. 16.

Plaintiff requested Leave to File an Amended Complaint on June 18, 2014, which was granted the following day. ECF Nos. 17, 22. On June 23, 2014, Plaintiff filed the Amended Complaint against Defendant. ECF No. 23.

A companion case, brought against Mr. Winterling, was filed on May 9, 2014 before this Court. *See* No. 2:14cv212 at ECF No. 1. Plaintiff then moved to have the two cases consolidated on July 15, 2014. After a hearing before United States Magistrate Judge Tommy Miller, the cases were ordered consolidated on September 2, 2014. Both parties consented to

proceed before a Magistrate Judge by October 6, 2014. ECF No. 37. This case was then referred to United States Magistrate Judge Tommy Miller to conduct further proceedings, on October 15, 2014.

The instant Motion to Dismiss Count 4 of the Amended Complaint for failure to state a claim was filed on July 15, 2014, with a memorandum in support. ECF Nos. 26–27. Plaintiff filed its Memorandum in Opposition on July 25, 2014 (ECF No. 29) and Defendant's Reply was filed on July 31, 2014 (ECF No. 33). After consolidation, the deadline for the Motion to Dismiss was reset, and a Motion Hearing was held on November 4, 2014. ECF No. 39. Robert Foley, Esq. represented Plaintiff and Robert Best Esq. appeared on behalf of the Defendant.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In the absence of such an adequate statement, Rule 12(b)(6) permits a defendant to move for dismissal on the ground that the plaintiff failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss on this basis should be granted if the complaint does not allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The plaintiff's "factual 'allegations must be enough to raise a right to relief above the speculative level,' thereby nudging [her] 'claims across the line from conceivable to plausible.'" *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (quoting *Twombly*, 550 U.S. at 555). To make this determination, the district court must construe the alleged "facts in the light most favorable to the plaintiff and draw all reasonable inferences in [her] favor." *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir.

4

2014) (internal quotation marks and citations omitted). The court "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### III. ARGUMENT

**A.  Defendant's Motion to Dismiss Count Four of Amended Complaint**

Initially, Defendant argued only that Count Four should be dismissed because there "cannot be an implied warranty of fitness when the metering valve was used for its ordinary purpose." ECF No. 27 at 8. In the Reply, Defendant argues four additional reasons for dismissing Count Four: (1) the Sprayer was not originally sold to Plaintiff; (2) Defendant was unaware of the specifics of the USS DYNAMIC job; (3) the relationship between the parties was a services contract not covered by the UCC; and (4) the metering valve is merely a stock component of the Sprayer. *See* ECF No. 33 at 1–2. The Court agrees with Defendant's initial argument, and having so concluded, need not address Defendant's supplemental arguments at this time. Accordingly, the Court moves now to analyze whether an item can be subject to the implied warranty of fitness for a particular purpose when it is used for its ordinary purpose.

> Va.Code § 8.2-315 provides: 'Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section [§ 8.2-316] an implied warranty that the goods shall be fit for such purpose.'

*Beard Plumbing & Heating, Inc. v. Thompson Plastics, Inc.*, 152 F.3d 313, 317 (4th Cir. 1998) (quoting VA Code Ann. § 8.2-315). When applying this law, the Supreme Court of Virginia has set out a three element test for the buyer to prove: "(1) the seller had reason to know the particular purpose for which the buyer required the goods, (2) the seller had reason to know the buyer was relying on the seller's skill or judgment to furnish appropriate goods, and (3) the

buyer in fact relied upon the seller's skill or judgment." *Id.* (quoting *Medcom, Inc. v. C. Arthur Weaver Co.*, 348 S.E.2d 243, 246 (Va. 1986)).

Comment 2 to VA Code Ann. § 8.2-315 provides insight into the proper definition of the phrase "particular purpose" found in the first prong of the test:

> A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

VA Code Ann. § 8.2-315, cmt. 2. "Accordingly, no implied warranty of fitness for a particular purpose [is] created" when "the application was [no]thing but the ordinary use." *Lescs v. Dow Chem. Co.*, 976 F. Supp. 393, 400–01 (W.D. Va. 1997). Therefore, the first prong of the *Medcom, Inc.* test is failed if the buyer does not show a "particular purpose" separate from the good's ordinary use. *See* VA Code Ann. § 8.2-315, cmt. 2.

The "good" at issue here is the new metering valve that was installed in the Sprayer by Defendant's repair technician.[2] *See* Am. Compl. ¶¶ 37–39. Plaintiff alleges that all three prongs of the implied warranty of fitness for a particular purpose are met by the transfer of the new metering valve to Defendant. *See* ECF No. 33 at 6–8. The Court disagrees on the first prong, and therefore need not reach the other two.

Plaintiff explains that a metering valve is used "to regulate the flow of the various paint components being mixed to ensure that the final product meets the exact parameters specific to

---

[2] As with the factual allegations included above, the assumption here that the transfer of the new metering valve to NCS constituted a sale of goods under the UCC is made for the limited purpose of deciding the instant Motion. The Court has considered *Princess Cruises, Inc. v. Gen. Elec. Co.*, 143 F.3d 828 (4th Cir. 1998), and this assumption does not constitute a factual or legal finding upon which the parties may rely for any other issue in this proceeding.

6

each job." Am. Compl. ¶ 18. This, as admitted by Plaintiff, is the ordinary purpose and use of a metering valve. In an effort to preserve its claim, Plaintiff asserts two separate "particular purposes" for the transaction in question: (1) the ordinary purpose listed above; and (2) "to render the Sprayer operational for use on the USS DYNAMIC job." ECF No. 29 at 6.

Plaintiff's first argument, that an ordinary purpose can also be a particular purpose, rests on a statutory interpretation of Comment 2 that only requires a "particular purpose" to be peculiar to a plaintiff's business. *See Id.* at 5 (citing 3C Michie's Jurisprudence, *Commercial Law*, § 15 (2008)). Attempting to satisfy this standard, Plaintiff alleges that "use of the Sprayer, including the metering valve, is peculiar to the nature of NCS' business." Am. Compl. ¶ 19.

Plaintiff's interpretation of Comment 2 runs afoul of both a plain reading of the law and relevant case precedent. The vast majority of courts addressing the application of Comment 2 have come to the same conclusion; that an "ordinary use" cannot also serve as the requisite "particular purpose" for the implied warranty of fitness for a particular purpose.[3] The Court agrees with this interpretation and **FINDS** that Plaintiff cannot sustain Count Four if its particular purpose in using the metering valve was the same as the metering valve's ordinary use.

---

[3] *See, e.g.*, *Lowe v. Sporicidin Int'l*, 47 F.3d 124, 132 (4th Cir. 1995) (claim dismissed for failure to allege "a particular purpose that in any way differed from the ordinary purpose"); *AIU Ins. Co. v. Omega Flex, Inc.*, No. 3:11cv23, 2011 WL 2295270, at *2 n.2 (W.D. Va. June 9, 2011) (stating that "a particular purpose requires a plaintiff to allege that the product failed to serve a purpose other than its ordinary purpose and peculiar and unique to the plaintiff"); *McDonald Bros. v. Tinder Wholesale, LLC*, 395 F. Supp. 2d 255, 266 (M.D.N.C. 2005) ("[o]rdinary use of a product forecloses recovery under the implied warranty of fitness for a particular purpose"); *Lescs*, 976 F. Supp. at 400–01 (denying claim where the application of a residential insecticide was for its "ordinary use"); *Foyle By and Through McMillan v. Lederle Labs.*, 674 F. Supp. 530, 535 (E.D.N.C. 1987) (denying claim where vaccine was for its intended purpose); *In re All Pending Chinese Drywall Cases*, 80 Va. Cir. 69 (2010) (dismissing count for failure to identify any use of drywall that was "peculiar" to plaintiffs' residences). *But see, e.g.*, *Longwall-Associates, Inc. v. Wolfgang Preinfalk GmbH*, No. 1:00cv86, 2002 WL 91879, at *3 (W.D. Va. Jan. 18, 2002) (stating that a "particular purpose is a use which is peculiar to the nature of [the buyer's] business whereas the ordinary purpose for a product includes uses which are customarily made of the goods in question." (internal quotation marks omitted)).

For the sake of argument however, the Court also notes that Plaintiff's first argument still fails even if Plaintiff's proposed interpretation is adopted. Under that scheme, a plaintiff asserts a valid particular purpose if it is shown that the use of the product was "peculiar" to the plaintiff's usual business. *See* ECF No. 29 at 5. Plaintiff attempts to plead this issue through the bare allegation that using the Sprayer, and in turn the metering valve, was peculiar to its normal business practice. However, given the utter lack of support provided for this allegation,[4] the Court **FINDS** that this pleading is "not entitled to the assumption of truth" because it is nothing "more than [a] conclusion[]." *See Iqbal*, 556 U.S. at 679. Accordingly, Plaintiff's first argument fails regardless of the interpretive approach adopted by this Court.

Plaintiff's second argument is that the "particular purpose" of the new metering valve was "to render the Sprayer operational for use on the USS DYNAMIC job." ECF No. 29 at 6. This argument fails logically on its face. Plaintiff attempts to use the need to complete a specific job as its particular purpose; however, it is not the completion of that job that is the purpose of the new metering valve. The valve, in and of itself, does nothing more than "regulate the flow of the various paint components being mixed." Am. Compl. ¶ 18. Ideally, by the valve achieving its objective, the Sprayer is then able to "meet the exact parameters" that Plaintiff needs in order to complete the USS DYNAMIC job. *See id.* Accordingly, the Court **FINDS** that "render[ing] the Sprayer operational for use on the USS DYNAMIC job" is not a valid "particular purpose" but merely a consequence of the metering valve's ordinary use.

---

[4] Quite the contrary, Plaintiff appears to contradict itself on this point. Plaintiff claims that the particular purpose of the Sprayer was for use on the USS DYNAMIC job, but three paragraphs before this allegation—that the "use of the Sprayer . . . is peculiar to the nature" of its business—Plaintiff admits that when Mr. Winterling left Surface to start "NCS, he brought the Sprayer with him for use by NCS." *Compare* Am. Compl. ¶ 19, *with* Am. Compl. ¶ 16. The fact that Mr. Winterling purchased the Sprayer for use by Surface and then brought it with him when starting NCS undermines his claim that its use by NCS is so rare and unusual as to be considered "peculiar."

Therefore, as a matter of law, Plaintiff has not pleaded a plausible claim to a "particular purpose" under the definition of VA Code Ann. § 8.2-315.  Defendant's Motion, ECF No. 26, is thereby **GRANTED** and Count Four of the Amended Complaint is **DISMISSED**.

B.      **Defendant's Motion to Dismiss Counts Four and Five of the Original Complaint**

"It is well-settled that a timely filed amended pleading supersedes the original pleading, and that motions directed at superseded pleadings are to be denied as moot." *Hall v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, No. 3:10cv418, 2011 WL 4014315, at *1 (W.D.N.C. June 21, 2011) (citing *Young v. City of Mount Ranier*, 238 F.3d 567, 573 (4th Cir. 2001)).  Accordingly, when Plaintiff filed its Amended Complaint the original Complaint was superseded and Defendant's Motion became moot. *See id.*

Therefore, Defendant's Motion to Dismiss, ECF No. 3, is **DENIED** as moot.

### IV.      CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion to Dismiss Count Four of the Amended Complaint, ECF No. 26, **WITH PREJUDICE**, and **DENIES AS MOOT** Defendant's Motion to Dismiss Counts Four and Five of the Original Complaint, ECF No. 3.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

**IT IS SO ORDERED.**

                                                    _____/s/_____
                                                                    Tommy E. Miller
                                                    UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
November 12, 2014